# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
#### 1:06cv350

| | |
|---|---|
| CHASE STUART WALKER, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **THIRD** |
| Vs. | ) **MEMORANDUM AND** |
| | ) **RECOMMENDATION** |
| CHARLES R. ("Chuck") WHITE; | ) |
| SPRAYLESS  SCRATCH REPAIR; | ) |
| MAGIC AUTO TOUCH UP, INC. | ) |
| individually and d/b/a Sprayless | ) |
| Scratch Repair, Sprayless Scratch | ) |
| Repair, Inc. and Mobile Recon; MAGIC | ) |
| AUTO TOUCH UP, individually and | ) |
| d/b/a Sprayless Scratch Repair, | ) |
| Sprayless Scratch Repair, Inc. and | ) |
| Mobile Recon; SPRAYLESS | ) |
|  SCRATCH REPAIR, INC.; and | ) |
| CPBBC, INC., | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

**THIS MATTER** is before the court upon defendant CPBBC, Inc.'s (hereinafter "CPBBC") Motion for Summary Judgment (#96)and defendants Charles White's, Magic Auto Touch Up, Inc.'s, and Sprayless Scratch Repair, Inc.'s (collectively hereinafter the "SSR" defendants) Motion for Summary Judgment (#94). In addition to the briefs of the respective parties, the court has also received approximately 1500 pages of evidentiary materials.   Also before the court are the response and reply briefs as to each motion.  Having carefully considered such materials, the undersigned enters this the third Memorandum and Recommendation in this matter.

# FINDINGS AND CONCLUSIONS

## I.      Summary of the Instant Dispositive Motions

The SSR defendants contend that plaintiff has failed to present sufficient evidence of partnership and that it is, therefore, entitled to entry of judgment in its favor. They also contend, for essentially the same reasons, that plaintiff's claims that are based on the existence of a partnership must also fail. The SSR defendants further contend that plaintiff's unjust enrichment claim, which is not predicated on partnership, must fail because plaintiff has failed to produce evidence of the value of the benefit that was unjustly provided to such defendants. In response, plaintiff contends that he has submitted evidence which creates a genuine issue of material fact on whether he had a partnership with such defendants and that a jury must decide the partnership issue. He further argues that his claim for unjust enrichment is made in the alternative and that if the jury finds no partnership existed, then it can determine the unjust enrichment of defendants based on plaintiff's payments of expenses for marketing and funding trade shows.

CPBBC first contends that plaintiff's sole claim against it for unjust enrichment fails because plaintiff's partnership claims fail. CPBBC further argues that "Plaintiff would not be entitled to funds received by CPBBC, Inc. which has not conducted any operations allegedly conducted by the claimed partnership entity," which the court takes to mean that CPBBC and SSR are distinct entities. <u>See</u> CPBBC's Memorandum in Support, at 8.  Apparently, it is CPBBC's contention that it is merely a holding company for receiving royalties generated from a license of the patented process or

products to nonparty Certified Plus. Plaintiff contends, however, that all royalties generated from the patented process or products are assets of the alleged partnership, that both he and White negotiated the deal with Certified Plus, and as such CPBBC has been unjustly enriched to his detriment.

## II. Summary Judgment Standard

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving [sic] party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. Anderson, supra. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Id. at 248. A dispute about a material fact is "genuine" only if the

evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id. The court must credit factual disputes in favor of the party resisting summary judgment and draw inferences favorable to that party if the inferences are reasonable, however improbable they may seem. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980). Affidavits filed in support of a defendant's Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979).

In determining whether a genuine issue of material fact exists, the admissible evidence of the non-moving party must be believed and all justifiable inferences must be drawn in his or her favor. Anderson, supra, at 255. In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." Id., at 252.

## III.    Discussion

In reciting the above applicable standard, two phrases stand out: first, that the moving party has the burden of production to show that there are no genuine issues for trial; and second, that the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." Id. After reviewing over 100 pages of arguments and approximately 1500 pages of exhibits, the undersigned cannot conclude that defendants have shown that there are no genuine issues for trial or that the evidence is so one-sided that one party must

prevail as a matter of law.

Unanswered in any of this material is an underlying question of why would plaintiff, who defendants contend was merely a regional distributor, participate in and fund national marketing efforts? On the opposite end of the stick is another questioon of why would plaintiff (who purports to be a 50/50 partner having an interest in not only his own sales but the sales of other regional representatives) not be inquiring on a weekly, monthly, quarterly, and yearly basis as to how sales were going nationwide? Also unanswered is why would a partner receive a commission on his own sales? The undersigned can only conclude that such questions are for a jury.

A.     **Partnership**

Plaintiff contends that beginning on some date in 2002, he and Defendant White formed a partnership to manufacture and sell automotive scratch repair systems, finishing kits, and touch-up paints and compounds. Am. Compl., at ¶ 13. He contends that such partnership was conducted under the assumed name of "Sprayless Scratch Repair. <u>Id.</u>, at ¶ ¶ 12-21. Defendants contend to the contrary, arguing that at all times the business described was conducted under the auspices of Magic Auto Touch Up, Inc., and later under Sprayless Scratch Repair, Inc. Although plaintiff takes some issue with what law is applicable, plaintiff alleges that the claimed "SSR" partnership was "organized and/or existed under the laws of Texas." Am. Compl., at ¶ 3. It appears that if a partnership was formed, it was formed under Texas law in 2002, as that was the place of the last act necessary to form the partnership.

In applying Texas partnership law to evidence produced in this case, SSR argues that

> When asked specifically about the terms of the alleged partnership and whether he contends the alleged partnership was "a North Carolina partnership or a Texas partnership," Plaintiff again refused to answer saying "it was our business. . .it was an international business, it was a national business, pan-national." Ex P Plaintiff's 2nd depo 56. The Plaintiff cannot establish that the alleged partnership was formed pursuant to the laws specified by the Texas Revised Partnership Act set forth above. Therefore, if Texas law applies to the formation of the alleged partnership then the parties' business relationship is not a partnership as a matter of law.

SSR's Memorandum in Support, at 19. SSR's argument appears to be that if plaintiff cannot point to the precise Texas law under which the partnership was formed, then no partnership exists under Texas law.

In reviewing Texas law, the undersigned has turned to a recent decision of the Supreme Court of Texas, which was handed one month before SSR filed its supporting brief.[1] The undersigned will quote from such decision extensively as only Texas and Oregon deviates from the Uniform Partnership Act ("UPA"). In <u>Ingram v. Deere</u>, 288 S.W.3d 886 (Tex. July 3, 2009), the Texas Supreme Court held as follows:

> TRPA provides that "an association of two or more persons to carry on a business for profit as owners creates a partnership." Tex.Rev.Civ. Stat. art. 6132b-2.02(a). . . . TRPA articulates five factors, similar to the common law factors, that indicate the creation of a partnership. They are:
> (1)    receipt or right to receive a share of profits of the business;
> (2)    expression of an intent to be partners in the

---

[1]    This case was not cited by any party.

business;

    (3)    participation or right to participate in control of the business;

    (4)    sharing or agreeing to share:

        (A)    losses of the business; or

        (B)    liability for claims by third parties against the business; and

    (5)    contributing or agreeing to contribute money or property to the business.

*Id.* art. 6132b-2.03(a). The common law required proof of all five factors to establish the existence of a partnership. See Coastal Plains, 572 S.W.2d at 287. However, TRPA contemplates a less formalistic and more practical approach to recognizing the formation of a partnership.

First, TRPA does not require direct proof of the parties' intent to form a partnership. Tex.Rev.Civ. Stat. art. 6132b-2.02 (stating that two or more persons may form a partnership regardless of "whether the persons intend to create a partnership"). Formerly, the intent to be partners was a "prime," although not controlling, element in the creation of a partnership. *Coastal Plains*, 572 S.W.2d at 287. Instead, TRPA lists the "expression of intent" to form a partnership as a factor to consider. Tex.Rev.Civ. Stat. art. 6132b-2.03(a)(2). Second, unlike the common law, TRPA does not require proof of all of the listed factors in order for a partnership to exist. Third, sharing of profits-deemed essential for establishing a partnership under the common law-is treated differently under TRPA because sharing of profits is not required. Cf. Friedlander, 14 S.W. at 787 ("A common interest in the profits is an essential element to constitute a partnership."). Still, TRPA comments note that the traditional import of sharing profits as well as control over the business will probably continue to be the most important factors. Tex.Rev.Civ. Stat. art. 6132b-2.03 Comment of Bar Committee. Additionally, TRPA recognizes that sharing of losses may be indicative of a partnership arrangement but states that such an arrangement is "not necessary to create a partnership." Id. art. 6132b-2.03(c). TRPA also restates and extends the list of circumstances in TUPA that do not by themselves indicate that a person is a partner.FN7 Id. art. 6132b-2.03(b).

The question of how many of the TRPA factors are required to form a partnership is a matter of first impression for this Court. The TRPA factors seem to serve as a proxy for the common law requirement of intent to form a partnership by identifying conduct that logically suggests a collaboration of a business's purpose and resources to make a profit as partners. After examining the statutory language and considering that TRPA abrogated the common law's requirement of proof of all five factors, we determine that the issue of whether a partnership exists should be decided considering all of the evidence

bearing on the TRPA partnership factors. While proof of all five common law factors was a prerequisite to partnership formation under the common law, the totality-of-the-circumstances test was, in some respect, foreshadowed in Texas case law. As Justice Jack Pope wrote for the San Antonio Court of Appeals,

> No single fact may be stated as a complete and final test of partnership. Each case must rest on its own particular facts and the presence or absence of the usual attributes of a partnership relation. The earlier Texas rule indicated that profit sharing was the controlling test. We think it is now generally held that such a test is not all-inclusive and controlling.... The absence of an express provision obligating the parties to share in the losses is also important and indicates that no partnership existed. But this feature too is not controlling.

*Davis v. Gilmore*, 244 S.W.2d 671, 673-74 (Tex. Civ. App-San Antonio 1951, writ ref'd) (citations omitted). Many states apply this totality-of-the-circumstances test.

We note the difficulty of uniformly applying a totality-of-the-circumstances test, *see Perry Homes v. Cull*, 258 S.W.3d 580, 592 (Tex.2008) (explaining the difficulty of applying a totality-of-the-circumstances test in determining whether a party waived an arbitration clause in a contract), but we cannot ignore the Legislature's decision to codify the essential common law partnership factors in TRPA without specifying that proof of all or some of the factors is required to establish a partnership. *See* Tex.Rev.Civ. Stat. art. 6132b-2.03; *In re M.N.*, 262 S.W.3d 799, 802 (Tex.2008) (explaining that courts presume that the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted). Yet, we can provide additional guidelines for this analysis. Of course, an absence of any evidence of the factors will preclude the recognition of a partnership under Texas law. *Cf. Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176 (Tex.1997) (applying TUPA). **Even conclusive evidence of only one factor normally will be insufficient to establish the existence of a partnership. To hold otherwise would create a probability that some business owners would be legally required to share profits with individuals or be held liable for the actions of individuals who were neither treated as nor intended to be partners**. See Tex.Rev.Civ. Stat. art. 6132b-3.03(a) (explaining that a partnership is liable for the acts of a partner done with authority or in the ordinary course of the partnership's business); *see also Kao Holdings, L.P. v. Young*, 261 S.W.3d 60, 63 (Tex.2008). The

Legislature does not indicate that it intended to spring surprise or accidental partnerships on independent business persons, if, for example, an employee is paid out of business profits with no other indicia of a de facto partnership under TRPA. On the other end of the spectrum, conclusive evidence of all of the TRPA factors will establish the existence of a partnership as a matter of law. The challenge of the totality-of-the-circumstances test will be its application between these two points on the continuum.

Id., at 895 -898 (footnotes omitted; emphasis added). Thus, the court will attempt to correlate what, if any, evidence produced corresponds to each factor.

**(1)     Receipt or Right to Receive a Share of Profits of the Business.**

There is absolutely no evidence that plaintiff ever received any share of profits of the business. Plaintiff argues that such is the reason he filed a complaint. Instead, if this factor is to be satisfied, plaintiff must produce some evidence that he had a "right to receive" a share of the profits of the alleged business. The best evidence of this "right to receive" comes from the testimony of Stuart Keele, who avers that he was present when the partnership came to fruition at a dinner hosted by Defendant Walker at his home in Texas. Keele Decl. ¶ 3; Keele depo., pp. 21-23, 26, 32. In such statement and testimony, Mr. Keele states as follows:

My understanding as to the way it was going to fall out was that Chuck White was going to be the one that actually stocked and manufactured the product and that Chase [Walker] was going to handle the sales and marketing and building the business as far as distributorships and bringing people into the business and expanding the business, and Chuck's end of the business was to provide the product, manufacture and product.

Keele Depo., at 24. As the testimony, reveals, however, Mr. Keele's perception of a partnership was not without equivocation:

... Mrs. White decided that she was going to take over the conversation

and, you know, she was asking Chase what his qualifications were and what makes him feel like he deserved to be an equal partner . . . . And frankly, it got kind of ugly . . . .

Id., at 26. Thus, the same testimony upon which plaintiff relies to show the creation of a partnership acts as a two-edged sword: it may also show there was not a meeting of the minds. In any event, the court must consider Mr. Keele's statements and testimony in a light most favorable to plaintiff, and it would appear that such testimony is probative on the issue of the right to receive profits.

### (2)    Expression of an Intent to be Partners in the Business.

The most probative evidence of record is a promotional video in which plaintiff and Defendant White's daughter appear. In this video, plaintiff states that he and defendant are partners in the SSR business, and plaintiff avers that Defendant White used such tape on a loop system at trade shows.[2] Taking such evidence in a light most favorable to plaintiff, it would appear that Defendant White, by tacitly approving such tape and replaying it at trade shows, has expressed to third parties the existence of a partnership. Put another way, a jury could draw a reasonable inference from Defendant White's alleged use of such tape shows an intent to be a partner with plaintiff in the SSR business. Plaintiff has also presented evidence that at a trade show in 2005, Defendant White expressed to Sam and Joanne Feil that plaintiff was his partner. Feil Depo., at pp. 5-11. The undersigned finds that there has been evidence produced upon which a reasonable jury could find that SSR held itself out to others in both tradeshows and in meetings with sales representatives or aspiring

---

[2]    The court understands that a loop system is a video that plays continuously the same advertisement throughout the day.

sales representatives that plaintiff was in a partnership with Defendant White.

### (3) Participation or Right to Participate in Control of the Business.

Perhaps the best evidence of purported participation or a right to participate in the business is found in evidence surrounding bringing in a possible third partner. In 2002, plaintiff avers that he asked Defendant Walker if he would be willing to split the venture into thirds, with White, Walker, and Robert Maynard each possessing one-third ownership. Walker Aff., at ¶ 5. Apparently, Mr. Maynard had a chip-fill system that would compliment the SSR process. Defendant White testified that he sent a fax to plaintiff and Robert Maynard setting forth this proposed ownership structure. Charles White Depo., at pp. 114-1182; Ex. A.

Another important showing was plaintiff's work in national trade shows for which he made all logistical arrangements and paid all costs. Absent some evidence that plaintiff was being paid to participate and was having his expenses reimbursed, the undersigned finds compelling the undisputed evidence that plaintiff consistently participated in national trade shows, set up such trade shows, and financed such trade show appearances, to be substantial evidence of actual participation in control of the business. As set forth earlier, a reasonable jury could determine that it makes no sense for a regional sales representative to bankroll or attend a national sales show unless he was being paid to do so *or* has some ownership interest in the business. There is no evidence that plaintiff was paid and the evidence that he attended these shows and paid the company's bills is undisputed. Indeed, the deposition of Ms. Feil indicates that plaintiff paid the bill for entertaining sales representatives from Canada who

attended a sales show in Florida. Thus, plaintiff has presented evidence upon which a jury could reasonably infer that plaintiff was actually in control or shared control of the overall business with Defendant White.

**(4)    Business Losses.**

The next factor requires consideration of evidence of  sharing or agreeing to share: (A) losses of the business; or (B) liability for claims by third parties against the business.  Apparently, this was a fairly profitable business, and appears to have operated, except at inception, in the black.  In considering "business losses" in a profitable business, the court believes it is fair to consider in the mix the sharing of expenses.  Plaintiff has presented substantial evidence that he not only shared in expenses, he footed the bill for any national marketing efforts, and it would appear that Defendant White footed the bill for manufacturing product.  In his deposition Walker testified that he and White split losses "the same way we split profits"--50/50. Walker Depo., at p. 107. There is no evidence of any claims by third parties for any casualty loss against this business.

**(5)    Contributing or Agreeing to Contribute Money or Property to the Business.**

As reflected above, the record is replete with evidence that plaintiff both agreed and contributed significant amounts of money to national marketing of the SSR product and process.  There is also evidence of record that Defendant White did not refuse such contributions and some evidence that when bills came he handed them to plaintiff.  <u>See</u> Deposition of Feil.

* * *

SSR relies heavily on plaintiff's failure to secure a federal tax ID number, his use of SSR's corporate name and tax ID, as well as the use of Defendant White's social security number and date of birth as evidence that no partnership existed, among other evidence. While one might reach such a conclusion, a reasonable juror could certainly reach the opposition conclusion as access to such confidential information as well as its use could well explain why plaintiff did not seek a new tax ID number or file returns as he believed such was being done by the SSR defendants.

Based on this court's review, plaintiff has presented some evidence as to each factor considered under Texas law. Such evidence is by no means conclusive evidence as would be require this court to find a partnership as a matter of law. Ingram v. Deere, supra, at 898. It is, however, sufficient to create a genuine issue of material fact for trial. The undersigned will recommend that SSR's Motion for Summary Judgment as to this claim be denied.

**B.** **Breach of Contract, Accounting, Constructive Trust, Breach of Fiduciary Duty, Fraud and Fraudulent Concealment, Disregarding of the Corporate Entity, and Punitive Damages.**

The SSR defendants seek summary judgment on the remaining claims asserted against them based on a theory that if the partnership claim fails, so do the duties that would arise thereunder. While defendants' legal theory is sound, the evidence proffered by plaintiff is sufficient for the matter to be resolved by a jury. The SSR defendants argue that

> Defendants are entitled to an entry of summary judgment on Plaintiff's claims of breach of contract, accounting, constructive trust, breach of fiduciary duty, fraud and fraudulent concealment, disregarding of the corporate entity and punitive damages

because

> Plaintiff cannot establish the existence of the alleged partnership which
> is an essential element of his remaining claims against the Defendants.

SSR Defendant's Memorandum in Support, at 24. Relying on the element of partnership exclusively, SSR fails to make a particularized showing as to why summary judgment should be granted as to any of these claims.[3] The undersigned will recommend that SSR's Motion for Summary Judgment as to these claims be denied.

### C. Unjust Enrichment

SSR contends that plaintiff's claim against it for unjust enrichment should be dismissed and summary judgment granted in SSR's favor because plaintiff has failed to come forward with any evidence of the value or measure of any benefit he has conferred upon defendants. SSR's Memorandum in Response, at 24-25. SSR further argues that plaintiff has presented no evidence that "Plaintiff expected reimbursement

---

[3] While frequently set forth as such, the court notes that there is no such thing as a cause of action for punitive damages. As a matter of state law, "punitive damages" is not a cause of action, but is instead a remedy available in very limited circumstances and should simply be asserted in the *ad damnum* clause of a complaint.

> As a general rule, "[p]unitive damages do not and cannot exist as an independent
> cause of action, but are mere incidents of the cause of action and can never
> constitute a basis for it. If the injured party has no cause of action independent of
> a supposed right to recover punitive damages, then he has no cause of action at
> all." J. Stein, Damages and Recovery § 195 at 389 (1972). North Carolina
> follows this general rule of law.

Hawkins v. Hawkins, 101 N.C.App. 529, 532 (1991). In North Carolina,

> punitive damages may be awarded only if a claimant proves that the defendant is
> liable for compensatory damages and that the defendant is guilty of fraud, malice,
> or willful or wonton conduct.

Combs & Associates, Inc. v. Kennedy, 147 N.C.App. 362, 374 (2001) (citation omitted).

for any expenditures he made for SSR-related operations." Id.

Plaintiff's alternative claim for unjust enrichment appears to be governed by North Carolina law.

> To state a claim for unjust enrichment, the plaintiff's allegations must set forth that a benefit was conferred on the defendant, that the defendant accepted the benefit, and that the benefit was not gratuitous.

Austin Hatcher Realty, Inc. v. Arnold, 2008 WL 2246675, 5 (N.C.App. 2008)(citation omitted).[4]  The law in North Carolina appears to be clear that:

> An implied contract is not based on an actual agreement, and *quantum meruit* is not an appropriate remedy when there is an actual agreement between the parties. Only in the absence of an express agreement of the parties will courts impose a *quasi* contract or a contract implied in law in order to prevent an unjust enrichment.

Whitfield v. Gilchrist, 348 N.C. 39,  497 S.E.2d 412, 415 ( 1998); accord Pritchett & Burch, PLLC v. Boyd, 169 N.C.App. 118, 124 (2005).

Clearly, unjust enrichment is pled in the alternative to partnership and breach of the partnership agreement. Even if the jury determined that there was no partnership, this claim could survive as there is ample evidence that plaintiff contributed significant sums, work, and effort  to the SSR endeavor, that Defendant White accepted such benefits, see Feil Depo., and there is no evidence that the relationship between the parties was such that a presumption of gratuity arises.  See Suggs v. Norris, 88 N.C.App. 539, 544, *cert. denied*, 322 N.C. 486 (1988).  Proffered are what appear to be copies of the account books kept by plaintiff, with numerous

---

[4]    Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

entries showing substantial expenditures for "NADA Badges," "Travel Exp Shows 1/14-2/3," and "NADA Expense Reimburse" among others. Indeed, the "NADA Expense Reimburse" found at Bates Stamp #1667 indicates that plaintiff was reimbursing Defendant White's expenses. Clearly, the contributions are measurable and inasmuch as they were paid through what appears to be a business account with no indicia that they were "gifts" to SSR, it cannot be said they were gratuitous. See Docket Entry # 94-30 and #94-31. Based on such entries, a reasonable jury could conclude that plaintiff made measurable contributions to the promotion of the SSR product and that such were not made gratuitously. Genuine issues of material fact remain for trial on plaintiff's alternative claim for unjust enrichment. The undersigned will recommend that the SSR defendants' Motion for Summary Judgment be denied as to this claim.

### D. CPBBC's Motion for Summary Judgment

CPBBC has also moved for summary judgment on plaintiff's claim of unjust enrichment and constructive trust. CPBBC contends that plaintiff "has not alleged sufficient facts by which to sustain claims for unjust enrichment and constructive trust against" CPBBC. CPBBC's Memorandum in Support, at 10. CPBBC's theory is that even if there was a partnership, plaintiff has produced no evidence that ownership of the patents held by Defendant White was transferred to any such partnership, and that CPBBC was created solely to hold royalties generated by such patents from non-party Certified Plus. In response, plaintiff contends that it was the intent of the partnership that all royalties from the patented product or process be income of the partnership,

and that CPBBC was simply created by Defendant White to hide partnership income.

While there is no evidence that Defendant White formally assigned ownership of his patents to the partnership, CPBBC's Mem., at 7, there is no requirement of such showing as patents are routinely licensed without the inventor giving up ownership of the patent. "A patentee need not release all rights in a patent when he enters into a license agreement . . . ." CJS PATENTS § 352. According to Texas partnership law,

> under well established partnership principles, ownership of property intended to be a partnership asset is not determined by legal title, but rather by the intention of the parties as supported by the evidence.

Foust v. Old Am. County Mut. Fire Ins. Co., 977 S.W.2d 783, 786 (Tex. Ct. App. 1998). This cuts both ways in this case: plaintiff may be able to prove that the parties intended any such license to be exclusive, Walker Depo., at 127; and CPBBC may be able to prove that Defendant White retained the right to receive royalties from third parties who were not customers of the alleged partnership. White Depo., at 13, 17-18.

Plaintiff has satisfied his burden of presenting evidence upon which a jury could find that revenue generated from Certified Plus was a partnership asset. Plaintiff testified that in 2005, Certified Plus approached him and Defendant White about the prospect of SSR becoming the exclusive paint repair providers for Certified Plus's automotive appearance contract that was being sold nationally to car dealerships. Walker Depo., at p. 127. He testified that he and Defendant White agreed that SSR would team up with Certified Plus. Id. Since 2005 Certified Plus has utilized the patented SSR technology to provide paint repair services to Certified

Plus' clients. Byrd Depo., at pp. 7-8. Plaintiff understood that SSR would receive almost $2.00 for every contract Certified Plus sold. Walker Depo., at p. 127. Defendant White testified that plaintiff is entitled to fifty percent of the $1.96 per contract paid by Certified Plus. Charles White depo., pp. 67-68. There is also evidence that the sums actually paid by Certified Plus to CPBBC were much greater than $1.96 per contract and that the payments were instead $10.61 per contract. The payment of $10.61 per contract was, according to plaintiff, unknown and withheld from him by the defendants. Depo. Of Jacques P. Adoue, III, at p. 17. Payments to CPBBC in 2006 totaled $98, 227.38 and $104, 126.54 in 2007. Id., at pp.17-18.

If such income was wrongfully transferred to CPBBC, then plaintiff has properly alleged that CPBBC holds such funds in a constructive trust.

> A constructive trust is a duty, or relationship, imposed by courts of equity to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through fraud, breach of duty or some other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust.

Lewis v. Boling, 42 N.C. App. 597, 604 (1979)(citations omitted). Plaintiff has also alleged and has presented sufficient evidence upon which a jury could determine that CPBBC was the alter ego of Defendant White. Most telling on this point is that while Defendant White testified that CPBBC was created to receive royalty payments from Certified Plus, he also testified that the patent was not transferred to such corporation. Instead, he testified that such royalty payments are made to CPBBC because *he* owns the patent. See Charles White Depo., at pp. 68-69. Under North Carolina law, affiliated corporations "in which the controlling interest in both is owned by the same

person" are considered "alter egos" if "one affiliated corporation is dominated by another to the extent that the dominated corporation has no separate mind, will or identity of its own." <u>Glenn v. Wagner</u>, 313 N.C. 450, 456-57 (1985).

Plaintiff has made a sufficient proffer that CPBBC is an entity into which the SSR defendants channeled revenue which may have belonged to the alleged SSR partnership. A reasonable jury could conclude that CPBBC is an alter-ego of Defendant White and has been used by him as a vehicle for diverting funds away from the alleged SSR partnership for his own personal benefit. Further, a reasonable jury could conclude that CPBBC has been and is currently holding funds which properly belong to the SSR partnership.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that

(1)     defendant CPBBC, Inc.'s Motion for Summary Judgment (#96) be **DENIED**; and

(2)     defendant Charles White's, Magic Auto Touch Up, Inc.'s, and Sprayless Scratch Repair, Inc.'s Motion for Summary Judgment (#94) be **DENIED**.

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **ten (10)** days of service of same. Failure to file objections to this Memorandum and Recommendation with the

district court will preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>reh'g</u> <u>denied</u>, 474 U.S. 1111 (1986); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir.), <u>cert</u>. <u>denied</u>, 467 U.S. 1208 (1984).

Signed: November 30, 2009

Dennis L. Howell
United States Magistrate Judge